# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

UNITED STATES OF AMERICA,

      Plaintiff,                      CRIMINAL CASE NO. 17-cr-20683
                                             CIVIL CASE NO. 21-cv-11641
v.                                               HONORABLE DENISE PAGE HOOD

KENNETH GARDNER,

      Defendant.
_____/

**ORDER DENYING MOTION UNDER 28 U.S.C § 2255 TO VACATE, SET ASIDE, OR CORRECT SENTENCE [#168] and SUPPLEMENTAL MOTION TO VACATE SENTENCE UNDER 28 U.S.C. 2255 [#177]; ORDER DENYING AS MOOT MOTION TO PRODUCE/COMPEL [#184]; ORDER DISMISSING CIVIL CASE NO. 21-11641; AND ORDER DENYING CERTIFICATE OF APPEALABILITY**

      On May 10, 2019, a jury convicted Defendant Kenneth Gardner ("Defendant" or "Gardner") of numerous counts, including felon in possession of a firearm, use of a firearm to commit a violent crime, carjacking and conspiracy to carjack. ECF No. 118. After the Court imposed a sentence totaling 444 months of incarceration, Defendant timely filed an appeal of his conviction. While awaiting a ruling on his appeal, Defendant sent two letters requesting the Court to grant relief or to "look into" his ineffective counsel. Those requests were denied by the Court due to lack of jurisdiction while awaiting the appeal decision. Defendant then submitted a request for new counsel on June 4, 2020. On June 16, 2020,

1

Defendant submitted a letter to the Court regarding the "ineffective counsel" he was provided. The Court again denied both Defendant's requests because they were submitted while awaiting the Sixth Circuit's decision. On June 24, 2020, the Sixth Circuit denied Defendant's appeal in its entirety.

On or about July 1, 2021, Defendant filed a Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. § 2255 ("Motion to Vacate"). ECF No. 168. In the Motion to Vacate, Defendant also requested an evidentiary hearing. Defendant submitted a supplemental motion to vacate the sentence on December 28, 2021. ECF No. 177. On March 15, 2022, Defendant filed a Motion to Produce/Compel the Government to file a brief regarding an alleged Strickland violation. ECF No. 184. The Government timely filed a response to the Defendant's Motion to Vacate that addressed all of Defendant's arguments. ECF No. 186. Defendant has filed several documents that reply to the Government's response and/or otherwise further his arguments why the Court should grant his Motion to Vacate. ECF Nos. 192, 193, 194, 195.[1]

I. BACKGROUND

The Sixth Circuit Court of Appeals framed the facts of this case as follows:

The conspiracy began at a Detroit strip club in August 2017. Gardner

---

[1] Defendant also identifies numerous issues raised on direct appeal. *See* ECF No. 168, PageID.2659-60. Those issues were decided on direct appeal by the Sixth Circuit, ECF No. 135, and the Court does not revisit them in this Order.

and Damon Washington were supposed to be working as doormen at the club and decided instead to rob its patrons. They hatched a simple plan: Gardner would rob the strip club patrons at gunpoint while Washington waited in a nearby getaway car. Washington purchased a gun—a pistol with a green laser sight—and the two began their venture, robbing at least ten people leaving various Detroit strip clubs.

In September 2017, the scheme evolved. Washington and Gardner joined forces with Veronica Sharp, a frequent patron of the MGM Grand Casino's high-limit room, and the three decided to focus on Detroit's casino clientele. They devised the "car-bumping" plan, which went like this: Washington and Sharp would identify a target and call Gardner when the target left the casino; Gardner, waiting outside in a stolen car, would follow the target and "bump" the target's car, causing a fake traffic accident; Gardner would then rob their target at gunpoint; and Washington and Sharp would arrive in time for the trio to escape with their spoils. The team proceeded to execute some version of this plan on at least nine different occasions.

Their first attempt failed. Washington and Sharp identified a man leaving a casino and Gardner followed him onto the highway. When Gardner bumped the man's car, he did not pull over as anticipated, and Gardner abandoned the chase.

Undeterred, the trio planned their next strike. On September 22, Washington and Sharp identified Xianhui Wu and his wife as the evening's victims. When the Wus left the casino in their Toyota Sienna van, Gardner followed the couple onto the highway in a stolen Jeep Cherokee. Washington and Sharp trailed behind in Washington's Dodge Charger. Washington called Gardner as they left the casino so the group could communicate during the robbery.

The Wus drove to their home, which was situated above a restaurant, and a security camera recorded Gardner as he approached the couple. Gardner pointed the gun with the green laser sight at the Wus and demanded their money, cell phones, and car keys. The Wus acquiesced, and Gardner drove away in their Toyota Sienna van. Washington, still on the phone, yelled that Gardner had "just caught a carjacking case" and directed him to abandon the stolen van. R. 94, Tr. Jury Trial Volume 7, PageID#: 1775. Washington picked Gardner up, and the trio split the

3

proceeds from the robbery.

Two days after the Wu robbery, the team targeted Desean McCullough. This time, Washington, who was displeased that Gardner had carjacked the Wus, took the lead to show Gardner "how it was supposed to be done." R. 93, Tr. Jury Trial Volume 4, PageID#: 1674. When McCullough and a woman left the nightclub, Washington, who was driving, and Gardner followed in a stolen vehicle. Sharp trailed behind in Washington's Dodge Charger. Washington bumped McCullough's car and, brandishing his gun, ordered McCullough and the woman to hand over their belongings. Gardner grabbed the items off the ground; Sharp picked up her coconspirators, and the trio escaped.

The next robbery occurred a few days later. Gardner, driving a stolen Dodge Stratus, bumped a couple's car and robbed them at gunpoint. The proceeds from this robbery included only a few dollars and some stolen credit cards. The team used the credit cards to buy gas and drove to Toledo, Ohio, searching unsuccessfully for another victim. When they returned to Detroit the next morning, Gardner bumped and robbed Amy Thompson.

On September 26, the group targeted Lulu Rodriguez. Still driving the stolen Dodge Stratus, Gardner bumped Rodriguez's Nissan Sentra; she pulled over and Gardner ordered her at gunpoint to leave her belongings in her car. Gardner drove away in the Nissan Sentra, abandoning the Dodge Stratus. Washington tried to convince Gardner that carjacking was unnecessary, but Gardner insisted that he could sell the carjacked vehicles, and Washington relented.

Although Sharp abandoned the scheme, Washington and Gardner carried on. On September 29, Washington and Gardner spotted John Falendysz and Vince Gerlando leaving a casino. Using the Nissan Sentra stolen from Rodriguez, Gardner bumped Falendysz's Chrysler 300. When Falendysz and Gerlando pulled over, they noticed Gardner's gun's laser beam pointing in their direction and handed over their belongings. Gardner jumped in Falendysz's Chrysler and drove away.

Later, in the early hours of September 30, Washington and Gardner returned to the casino and targeted Mark Beltarri. As Beltarri left the casino in his Chevrolet Malibu, Gardner followed in a stolen sedan, and

4

> Washington trailed in his Dodge Charger. Gardner bumped Beltarri's Chevrolet, and upon exiting his car to inspect the damage, Beltarri saw Gardner's gun, panicked, and ran for the driver's seat. Gardner grabbed the car's front door, Beltarri resisted, and Gardner shot at his head, missing by eighteen inches. Beltarri immediately surrendered his valuables and watched as Gardner drove away in the stolen Chevrolet.
>
> The surge of carjackings prompted Michigan police to investigate. The security footage from one of the casinos allowed officers to link the Dodge Charger to Washington and, after obtaining a warrant, to place a tracking device on Washington's car. On October 1, officers established surveillance. They observed Washington and Gardner follow Ann Wiseley as she left a casino and watched Gardner bump and approach her car. The officers rushed in to stop the imminent carjacking and Gardner threw his gun under Wiseley's car and tried to run away. Police arrested Gardner and recovered the gun, which was loaded with two bullets and equipped with a green laser sight.
>
> The grand jury indicted Gardner on one count of conspiracy to commit carjacking, in violation of 18 U.S.C. § 371; four counts of carjacking and one count of attempted carjacking, in violation of 18 U.S.C. § 2119; five counts of using, carrying, and brandishing a firearm during and in relation to the carjacking, in violation of 18 U.S.C. § 924(c); and multiple counts of illegally possessing a firearm by a previously convicted felon, in violation of 18 U.S.C. § 922(g)(1).
>
> A jury convicted Gardner on all counts. The district court denied Gardner's Federal Rule of Criminal Procedure 29 motion for judgment of acquittal and sentenced him to thirty-seven years in prison. Gardner timely appealed.

ECF No. 135, PageID.2305-10.

As to Defendant's 37-year (444 month) prison sentence, the Court imposed a sentence of: (a) 12 months on each of counts 1, 2, 4, 7, 9, 10, 12, 13, 15, 16, and 18, to be served concurrently; plus (b) 84 months on count 3, to be served consecutively; plus (c) 84 months on count 8, to be served consecutively; plus (d)

84 months on count 11, to be served consecutively; plus (e) 120 months on count 14, to be served consecutively; plus (f) 60 months on count 17, to be served consecutively.

In his Motion to Vacate, Defendant makes the following 11 claims:

1. The Government withheld necessary impeachment evidence resulting in a *Brady* violation.

2. Damon Washington and Veronica Sharp were Government informants.

3. Defendant was targeted by the Government because of his mental disabilities and was the victim of deliberate "sting operations."

4. The Government's "sting operations" constitute entrapment.

5. The firearm convictions are invalid because Damon Washington provided him with the gun, which Damon Washington received from the Government.

6. Counsel was ineffective for being dishonest and never visiting Defendant to discuss the strategy for the trial.

7. Counsel was ineffective for attempting to extort Defendant's mother.

8. Counsel was ineffective at sentencing based on the First Step Act, 18 U.S.C § 924.

9. Counsel was ineffective for saying the Defendant's malfeasance would "get him back in court."

10. Counsel was ineffective for failing to correct the Government's classification of an attempted carjacking as an actual carjacking.

11. Counsel was ineffective for admitting Defendant's guilt in his opening statement.

ECF No. 168, PageID.2651-52; ECF No. 177, PageID.2733-34.

## II.     LEGAL STANDARDS

### A.     28 U.S.C. § 2255

28 U.S.C. § 2255 authorizes a federal prisoner to move the district court to vacate a sentence. 28 U.S.C. § 2255(a). A defendant seeking relief under § 2255 "must allege as a basis for relief: (1) an error of constitutional magnitude; (2) a sentence imposed outside statutory limits; or (3) an error of fact or law that was so fundamental as to render the entire proceeding invalid." *Pough v. United States*, 442 F.3d 959, 964 (6th Cir. 2006) (citing *Mallett v. United States*, 334 F.3d 491, 496-97 (6th Cir. 2003)). When raising claims alleging errors of constitutional magnitude, a defendant must show that the constitutional error had a substantial and injurious effect or influence on the proceedings. *Brecht v. Abrahamson*, 507 U.S. 619, 637-38 (1993); *Watson v. United States*, 165 F.3d 486, 488 (6th Cir. 1999). Relief under § 2255 requires a showing of "a fundamental defect which inherently results in a complete miscarriage of justice." *Davis v. U. S.*, 417 U.S. 333, 346 (1974).

### B.     Ineffective Assistance of Counsel Claims

Under the Sixth Amendment, a defendant has a right to "have the assistance of counsel for his defense." U.S. Const. Amend. VI. A defendant under the Sixth Amendment has a right to "reasonably effective assistance of counsel." *Strickland*

7

*v. Washington*, 466 U.S. 668, 687 (1984). In *Strickland*, the Supreme Court articulated a two-prong test for ineffective counsel:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown of the adversary process that renders the result unreliable.

*Id*.

"There is a strong presumption that legal counsel is competent," *United States v. Osterbrock*, 891 F.2d 1216, 1220 (6th Cir. 1989), and "falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689. A "reviewing court must give a highly deferential scrutiny to counsel's performance." *Ward v. United States*, 995 F.2d 1317, 1321 (6th Cir. 1993). "The reasonableness of counsel's performance is to be evaluated from counsel's perspective at the time of the alleged error and in light of all the circumstances." *Kimmelman v. Morrison*, 477 U.S. 365, 384 (1986). "The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland,* 466 U.S. at 694. An attorney is not deficient for failing to argue a frivolous claim. *See,*

8

*e.g., Krist v. Foltz*, 804 F.2d 944, 946 (6th Cir. 1986) ("An attorney is not required to present a baseless defense or to create one that does not exist.").

### III. ANALYSIS

A district court may dismiss a § 2255 motion if the allegations in the motion, viewed against the record show no cause for relief, or are merely frivolous. *United States v. Withers*, 638 F.3d 1055, 1063 (9th Cir. 2010). The Court finds that Defendant has failed to offer evidence to support the claims he has made. He offers only conclusory statements of his claims, *see* ECF No. 168, PageID.2651-52, 2653, 2657-58, without providing any explanation how the record supports the bare bone claims themselves. The only arguments he develops, or for which he cites any authority, are those based on poverty, fatherless children, and the racial disparities and systematic racism in the criminal justice system. None of those arguments, however, aids his Motion to Vacate.

Defendant's first asserts that the Government withheld documents constituting a *Brady* violation. *Brady v. Maryland*, 373 U.S. 87 (1963). Pursuant to *Brady*, the Government is required to turn over evidence in its possession if it is both favorable to the accused and material to the accused's guilt or punishment. *United States v. Clark*, 988 F.2d 1459, 1467 (6th Cir.), cert. denied 114 S.Ct. 105 (1993). Defendant has not identified any evidence documents of any nature the Government withheld or failed to produce to him or his trial counsel. The

9

Government has provided a record of the documents provided to the Defendant, including, in part, police reports, witness statements, laboratory reports, and co-defendants' cooperation agreements.

Defendant's next alleges that co-defendants Washington and Sharp were government informants. Defendant has not provided evidence to the Court to corroborate this allegation. The testimony, convictions, and sentences of his co-defendants demonstrate otherwise. The evidence in the record reflects that Washington and Sharp did not "work with" the Government until after their arrests in relation to this case. Defendant's third argument is that the Government targeted him, and he was a victim of their "sting operations." This claim has no merit, as no evidence has been provided to corroborate this claim.

Defendant's fourth argument is that the alleged "sting operations" should be considered entrapment. An entrapment claim cannot be raised in a § 2255 motion unless there is an associated constitutional issue, *Lothridge v. United States*, 441 F.2d 919 (6th Cir.), cert. denied, 404 U.S. 1003 (1971)), and Defendant presents no such constitutional issue in his Motion to Vacate. Even if Defendant could raise an entrapment claim in this motion, two elements must be met: "(1) the government induced the crime; (2) the defendant lacked the predisposition to engage in criminal conduct." *United States v. Castaneda*, 2020 WL 4364224, at *3 (E.D. Ky. 2020). Neither element can be met in this case.

The Government has provided significant evidence showing: (1) Defendant and his co-defendants planned the crimes committed; and (2) Defendant's willingness to participate in the criminal conduct with which he was charged and convicted. As the presentence report reflects, on the two previous occasions Defendant was imprisoned, he stole vehicles – without the involvement of Washington or Sharp. Defendant does not contend that those instances were the result of entrapment or even conspiracy. Defendant has not provided any evidence to substantiate his claims that the Government induced the crimes. As such, Defendant has offered only conclusory allegations that Washington and Sharp were cooperating with the Government in conjunction with committing the underlying crimes.

Defendant's fifth argument is that the firearm conviction is invalid because Washington gave the Defendant the gun, and Washington received the gun from the Government. The Court previously addressed and rejected this argument -- there remains no evidence to support Defendant's argument that Washington received the gun from the Government. Defendant's sixth argument is that his counsel was ineffective for being dishonest and never visiting the Defendant to discuss the strategy for trial, but Defendant fails to support this claim with any factual basis.

Defendant's seventh argument is that his counsel was ineffective for

11

attempting to extort the Defendant's mother. The Defendant has not provided any evidence that any extortion attempt(s) occurred, nor has he shown that he was prejudiced in any way by that alleged conduct by his counsel. Defendant's eighth argument is that his counsel was ineffective for purposes of sentencing. At sentencing, the Court addressed the stacking of his three offenses for brandishing a firearm in relation to a crime of violence. Defendant, however, has not explained how his counsel or the Court erred in assessing his crimes under 18 U.S.C. 924(c).

Defendant's ninth argument is that his counsel was ineffective for saying Defendant's malfeasance would "get him back in court." Defendant has not offered any relevant basis to support this allegation, nor does he explain how such a comment had any bearing on his defense or conviction. Defendant's tenth argument is that his counsel was ineffective for failing to correct the Government's classification of an attempted carjacking as an actual carjacking. Defendant does not support this argument, and the Court notes that the jury convicted him of attempted carjacking on Count 16. Defendant appears to be confused about his conviction on Count 16 based on the labeling of the offense in the Judgment. *See* ECF No. 168, PageID.2656 (Count 16 is listed as "18 U.S.C. § 2119 Carjacking – Motor Vehicle," not attempted carjacking). But, as the Verdict Form clearly reveals, the charge for Count 16 was "Attempted Carjacking of a Motor Vehicle." *See* ECF No. 70, PageID.343.

Defendant's eleventh argument is that his counsel was ineffective for admitting Defendant's guilt in his opening statement. After reviewing the trial transcript, the Court finds that there was no indication or admission of Defendant's guilt by his counsel. Defendant's counsel asserted that Washington was the guilty party, as evidenced by Washington's guilty plea, and that Washington would be testifying in an effort to blame everyone else, in particular Defendant, for Washington's crimes. *See* ECF No. 88, PageID.741-43 (the relevant portion of the transcript of Defendant's counsel's opening statement).

For the reasons stated above, the Court finds that Defendant has not provided any basis for relief pursuant to Section 2255, nor any evidence that contradicts the overwhelming evidence of guilt the Government introduced against him. For the reasons set forth above, the Court denies the Motion to Vacate.

## IV. REQUEST FOR EVIDENTIARY HEARING

Within his Motion to Vacate, Defendant requested a motion for evidentiary hearing. The Sixth Circuit has held that:

> [W]hen a factual dispute arises in a § 2255 motion, the habeas court must hold an evidentiary hearing to determine the truth of the petitioner's claims *unless* the record conclusively shows that the petitioner is entitled to no relief. *Valentine v. United States*, 488 F.3d 325, 333 (6th Cir.2007), *cert. denied*, --- U.S. ----, 128 S.Ct. 1311, 170 L.Ed.2d 127 (2008) (emphasis added). Stated another way, the court is not required to hold an evidentiary hearing if the petitioner's allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact. *Id*.

*Amr v. United States*, 280 F. App'x 480, 485 (6th Cir. 2008).

For the reasons set forth above, the Court concludes that the record contradicts Defendant's conclusory allegations. An evidentiary hearing is unnecessary, especially as Defendant has offered no evidence that would support any of his allegations. The Court denies Defendant's request for evidentiary hearing.

## V. MOTION TO PRODUCE/COMPEL

On March 15, 2022, Defendant prepared a Motion to Produce/ Compel, asking the Court to order the Government to respond to his Motion to Vacate. The Court did not receive the Motion to Produce/ Compel until March 24, 2022. Several days earlier, on March 18, 2022, the Court entered an order ordering the Government to file its response to the Motion to Vacate by May 15, 2022. Accordingly, Defendant's Motion to Produce/Compel is denied as moot.

## VI. CERTIFICATE OF APPEALABILITY

"The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rules Governing § 2254 Cases, Rule 11(a), 28 U.S.C. foll. § 2254. In order to obtain a certificate of appealability, a defendant "must make a substantial showing of the denial of a constitutional right." *Slack v. Daniel*, 529 U.S. 473, 483 (2000); 28 U.S.C. § 2253(c)(2). To demonstrate this denial, the defendant is required to show that "reasonable jurists

14

could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner, or that the issues presented were adequate to deserve encouragement to proceed further." *Slack,* 529 U.S. at 483-84 (citation and internal quotations omitted). In other words, when a district court rejects a defendant's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims to be debatable or wrong. *Id.* at 484. Courts must either issue a certificate of appealability indicating which issues satisfy the required showing or provide reasons why such a certificate should not issue. 28 U.S.C. § 2253(c)(3); Fed. R. App. P. 22(b); *In re Certificates of Appealability,* 106 F.3d 1306, 1307 (6th Cir. 1997).

The Court concludes that, with respect to each of the grounds asserted in his Motion to Vacate, Defendant has not shown (and cannot show) that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner, or that the issues presented were adequate to deserve encouragement to proceed further." *Slack,* 529 U.S. at 483-84 (citation and internal quotations omitted). For the reasons stated above, the Court finds that the issues raised by Defendant are without merit, and the Court will not issue Defendant a certificate of appealability.

**VII. CONCLUSION**

15

For the reasons stated above,

IT IS ORDERED that Defendant's Motion to Vacate, Set Aside or Correct Sentence under 28 U.S.C. § 2255 [Criminal Case No.17-20683, ECF No. 168] and Supplemental Motion to Vacate Sentence under 28 U.S.C. 2255 [Criminal Case No.17-20683, ECF No. 177] are **DENIED.**

IT IS FURTHER ORDERED that Petitioner's Motion to Produce/Compel [Criminal Case No.17-20683, ECF No. 184] is **DENIED AS MOOT.**

IT IS FURTHER ORDERED that the Motion to Vacate, Set Aside or Correct Sentence Under 28 U.S.C § 2255 [Civil Case No. 21-11641] is **DISMISSED WITH PREJUDICE and designated as CLOSED.**

IT IS FURTHER ORDERED that a certificate of appealability not issue in this case.

        s/Denise Page Hood  
        DENISE PAGE HOOD  
        United States District Judge

DATED: April 28, 2023